Helene H. KESSLER, Appellant,

v.

Judd KESSLER, Appellee.

No. 13200.

District of Columbia Court of Appeals.

Argued Sept. 21, 1978.

Decided Jan. 23, 1979.

Helene H. Kessler, pro se.

Mark B. Sandground, Leonard J. Dack and Glenn C. Lewis, Washington, D. C., for appellant.

Peter R. Sherman, Washington, D. C., for appellee.

Before KELLY, GALLAGHER and NE-BEKER, Associate Judges.

NEBEKER, Associate Judge:

Appellant Helene Kessler urges this court to reverse a final judgment in a divorce proceeding on two grounds: (1) the trial judge erred in ignoring, in the final judgment, a proffer of settlement, and (2) the trial judge, after finding that appellant had deserted the marital abode, misapplied the law in barring her from receiving alimony. We conclude that no error was committed by the trial court in disregarding the alleged proffer of settlement. However, a miscalculation of the amount due appellant from the sale of the marital house and an erroneous conclusion of law, upon which the denial of alimony was based, require reversal and remand.

## I

The couple was married on June 26, 1969. Marital troubles erupted six months after the marriage. These problems persisted, with appellant threatening to leave the marital abode approximately twice each year, until October 9, 1975, when she did leave. Before departing, appellant was assured by her husband that he would not sue her for desertion, although nothing was said regarding the assertion of desertion as a bar to alimony.

Ten months before the separation the parties had purchased a house in the District of Columbia for $90,000 with $5,000 of the $30,000 down payment coming from appellant. After attempts at reconciliation failed, appellee obtained counsel to work out a property settlement with his wife. The property was sold in September of 1977 for $125,000, resulting in a profit of approximately $57,000, which is presently held in an interest bearing savings account. After some negotiation, appellant's counsel sent a letter to appellee's attorney indicating acceptance of appellee's offer to divide equally the proceeds from the sale of the house. The letter also indicated acceptance of appellee's offer to pay $350 per month for eighteen months to provide for his wife's housing. After the document of settlement had been prepared, however, appellant refused to sign, claiming she had never authorized her counsel to agree to all of the conditions of the offer.

Appellee proceeded according to the agreement, making the monthly payments, notwithstanding appellant's refusal to sign the document. Nineteen months later, in April of 1977, appellee filed for an absolute divorce on the grounds of separation without cohabitation for one year or, in the alternative, voluntary separation without cohabitation for six months. Appellant crossclaimed for support and maintenance

payments.[1]  Payment of support pendente lite was required of appellee.

At trial, appellee claimed that permanent alimony would be barred if the court found that a binding agreement had been reached by the parties.  If no agreement existed, appellee contended, the appellant's desertion barred any award of alimony or separate maintenance.  A bifurcated trial ensued.

The issue at the first portion of the trial was whether a valid agreement existed.  Appellee stressed that a settlement had been reached.  He proffered to the court his willingness to divide the proceeds from the sale of the house equally, in fulfillment of the second term of the agreement.  The first term of the agreement had already been met by the eighteen monthly payments appellee had made.  The court concluded that although an offer had been made, neither the correspondence nor the conduct of the wife constituted an acceptance.  Hence, no valid agreement was found to exist.

The second part of the trial addressed whether the wife was entitled to support.  Appellee claimed that appellant had left the marital home against his will, which constituted desertion, and that this desertion barred an award of support or alimony.  He contended that he had not helped appellant move.  He also offered evidence to prove that appellant was capable of supporting herself, *i. e.,* that any inability to work full time was self-imposed.  Appellant countered that the parties had agreed to separate and that this agreement barred any claim of desertion.  She also contended that he had helped her move.  Further, she testified that she was suffering from a physical illness rendering her unable to support herself.  The evidence also indicated that she had little income and substantial debts, mostly for medical treatment.  Finally, to sustain her alleged need for support, it was shown that at the time of trial, appellant had part-time work in translating and abstracting articles on medical matters, realizing less than $5,000 annually and that appellee, an attorney for the government, with eleven years of service, received an annual income of approximately $47,500.

The court granted an absolute divorce based on a separation for one year without cohabitation.  It awarded the wife the amount she had paid toward the purchase of the house, $5,000, plus one-half of the interest earned on the amount in the savings account, and counsel and witness fees.  The court found that the appellant was able to support herself and concluded that appellant was barred from receiving alimony since she was guilty of deserting the marriage.

## II

Appellant claims that the trial judge erred in ignoring appellee's proffer of settlement.  The alleged proffer is the equal division of the proceeds from the sale of the house.  Appellant bases her claim on the exchanges during trial which are set forth below.

[Counsel for appellee]: What proffer, if any, are you making with regard to those proceeds?

[Appellee]: I agreed to split the proceeds of the sale with my wife, and I am still prepared to split the proceeds of the sale.

[The Court]: Sir, by split, do you mean an equal split?

[Appellee]: An equal split.

[The Court]: And that would be $58,700 plus whatever interest divided equally?

[Appellee]: Yes, Your Honor.

Later in the proceedings, the subject was again discussed.

[Counsel for appellee]: Your Honor, Mr. Kessler has determined the exact amount of the sales proceeds to be $57,052.04.

[The Court]: $57,052.04 were the real estate proceeds?

---

1. Once the divorce was granted, this crossclaim assumed the character of a claim for alimony.  *See* note 2, *infra.*

[Counsel for appellee]: And that is without any interest.

[The Court]: Now since that time there has been some interest of an unknown amount that has been accumulated and whatever the totality of that was, the proffer has been that he is willing that she have one half of that?

[Counsel for appellee]: That's right.

[The Court]: Now, was that under any and all circumstances?

[Counsel for appellee]: It is, Your Honor. It is as if the proceeds had been divided at the office of the settlement attorney in accordance with the contract.

[The Court]: Thank you for the information.

While it is true that the exchanges quoted above show appellee's willingness to divide the property, they must be read in context to understand the extent of the duration of the proffer. Both passages cited above are taken from the first portion of the trial which treated the question of the existence of a binding settlement agreement. In reality, appellee's proffer was that he was still willing, during that portion of trial, to go through with the settlement equally dividing the proceeds from the sale of the house. When it was determined that no agreement had been reached, the trial proceeded to the second issue of support payments and appellee's willingness to divide the proceeds ended. This reading of the facts is sustained by argument made by appellee's counsel during his opening remarks at trial.

It is our position of course that there is a binding [settlement] agreement which bars any alimony. If the Court agrees with that as a matter of law and I think that it is a legal issue, then the case is over at that point. If however, the Court finds that there is no [settlement] contract, then the Court must deal with the issues of alimony and the division of the proceeds of the house . . . .

That is our position that if there is no contract, those proceeds should be awarded to Mr. Kessler except for five thousand dollars which is the extent of his wife's financial contribution to the home.

■ The appellant's contention that the judge erred in ignoring appellee's proffer to share the proceeds from the sale of the house equally seems to be factually incorrect. In reviewing the record, it appears clear that appellee's proffer terminated when the settlement agreement failed. The trial court, therefore, committed no error in ignoring the proffer in deciding the support issue, since the court had previously disposed of the question concerning the validity of the agreement upon which the appellee's proffer was based.

### III

In the second portion of the trial, the trial court received evidence concerning the wife's claim for support. The court determined that the wife had deserted the marriage and that such action barred payment of any alimony according to *Lee v. Lee,* D.C.App., 267 A.2d 824 (1970), and *Roberson v. Roberson,* D.C.App., 297 A.2d 769 (1972). Appellant challenges this conclusion that alimony is barred.

■ We hold that desertion, while a bar to separate maintenance, is not an absolute bar to alimony.[2] D.C.Code 1978 Supp., § 16–913 provides that where a divorce is granted, the court may require a spouse "to pay alimony to the other spouse, if it seems just and proper." Desertion is but one of a number of factors to be taken into consideration by a judge in determining whether to award alimony. *Quarles v. Quarles,* 86 U.S. App.D.C. 41, 179 F.2d 57 (1949).

In some cases, desertion may indeed be the controlling factor in denying payment

2. Appellant's cross-claim was for maintenance and support payments. In the Findings of Fact, however, the court evidently considered the claim for maintenance and support as a claim for alimony, since a divorce had been granted. Separate maintenance and alimony are but different labels for court-ordered payments. Traditionally, the former has been associated with pre-divorce payments made during a separation of the spouses, while the latter has been applied to payments made after a divorce has been granted.

of alimony, as it was in *Quarles, supra,* and in *Mazique v. Mazique,* 123 U.S.App.D.C. 48, 356 F.2d 801 (1966), where alimony was denied the deserting wife. Nonetheless, whether controlling or not, desertion is a factor which must be considered in the judgment of what would be a just and proper determination of both whether to award alimony and if so, the amount thereof.[3]

■ This holding does not conflict with the holdings in *Lee* and *Roberson.* The holdings of those two cases are that desertion by a wife (and, presumably, a husband) "is a bar to a claim for separate maintenance." *Roberson, supra* at 770. To hold otherwise, the court reasoned in *Lee,* "would encourage families to separate rather than to remain together to resolve their differences." *Lee, supra* at 826. Once a divorce is granted, however, the rationale justifying denial of support payments during separation fails. Consequently, the court then becomes bound to consider the equities of the case in awarding or disallowing alimony. *See Quarles v. Quarles, supra,* and D.C.Code 1978 Supp., § 16–913. Therefore, we hold that the trial court erred in concluding that *Lee* and *Roberson* bar appellant's claim for alimony.

### IV

■ Finally, in calculating the amount due each party in the division of the property, the trial court awarded the appellant $5,000 of the proceeds from the sale of the marital house, the amount she contributed for the down payment. It appears that this division of the property overlooks the proportional amount of appreciation resulting from the wife's contribution. While we acknowledge that the trial court has broad discretion in apportioning jointly held property, *McGean v. McGean,* D.C.App., 339 A.2d 384 (1975), we find no indication on the record that the amount realized from appreciation of the house was considered by the court in its award. Accordingly, we also direct that on remand the trial court

consider whether the wife is not also entitled to a share of the appreciation in some proportion to her part of the down payment.

For the foregoing reasons, we vacate the judgment of the trial court insofar as it denied alimony and remand for further proceedings on the question of alimony and property division. In all other respects the judgment is affirmed.

*So ordered.*

---

**3.** Nothing in this opinion should be construed to preclude pendente lite support payments,

which can be ordered at the trial court's discretion. D.C.Code 1978 Supp., § 16–911.