Leo Brison NORRIS, Jr., Appellant,

v.

Alice Friend NORRIS, Appellee.

No. 79–669.

District of Columbia Court of Appeals.

Argued April 3, 1980.

Decided Aug. 27, 1980.

---

George J. Goldsborough, Jr., Washington, D. C., with whom Robert B. Norris, Washington, D. C., was on the brief, for appellant.

Leonard Z. Bulman, Washington, D. C., for appellee.

Before GALLAGHER, NEBEKER and HARRIS, Associate Judges.

GALLAGHER, Associate Judge:

This appeal in a divorce case involves an antenuptial contract as a defense to an award of alimony to the wife. The trial court, applying Florida law, struck down

the agreement because it was entered into without full disclosure of the husband's assets and in circumstances that were unduly coercive to the wife. We agree with the trial court's conclusion and find no other abuse of discretion in the award of alimony.

In October 1975, while the parties were vacationing at Mr. Norris' second home in Florida prior to their marriage, appellee suggested that an antenuptial agreement would be appropriate in their circumstances. She was in her early 40's and he in his late 50's. Both parties had children by previous marriages.

Mr. Norris had his attorney prepare a contract, which stated in pertinent part

Should said marriage relationship be terminated by death or legal proceedings, his and her property shall be free from any claim by the other on account of dower, curtesy, inheritance, widow allowance, homestead, alimony, or other statutory right, the same as if the said marriage had never been celebrated.

The contract specified that it would be construed under Florida law.

Appellee was upset by the terms of the agreement. She consulted her own attorney, who advised her not to sign unless certain changes were made. Appellant refused to make the changes, and discussion was dropped. Then on December 15, 1975, approximately an hour before the marriage, she executed the agreement in its original form upon Mr. Norris' demand.

After a stormy marriage, the parties separated in March 1978. Mrs. Norris sued for divorce and alimony, and Mr. Norris interposed the antenuptial contract as a defense. Discovery revealed that Mr. Norris had assets of approximately $450,000. Appellee had few assets. She would have received $200 a month alimony from a previous husband for several more years, but this amount had terminated on her remarriage to Mr. Norris. Although untrained in any profession, she had worked intermittently during the marriage and after the separation.

The trial judge granted a divorce on the ground of voluntary separation for six months and awarded Mrs. Norris attorney's fees of $2,000 and alimony comprising a lump sum payment of $11,000 and 18 monthly payments of $400. He refused to enforce the antenuptial contract concluding that, under Florida law, the contract was not fair and reasonable, and the husband failed to meet his burden of disclosure. The trial judge also questioned whether Mrs. Norris had voluntarily signed the agreement. As an additional premise for invalidating the agreement, the court looked at the public policy of the District of Columbia, as articulated in *Burtoff v. Burtoff*, Super.Ct.D.C., Civil No. S–36–77, D–3441–77, 105 Wash.D.L.Rep. 1917 (Oct. 25, 1977). That trial court decision was recently affirmed, D.C.App., 418 A.2d 1085 (1980) (antenuptial agreements not automatically void as against public policy, but will be carefully scrutinized for their fairness, disclosure, and voluntariness).

■ The validity of the antenuptial contract must be decided under Florida law, as provided in the contract itself and stipulated by the parties to this action. The general rule is that parties to a contract may specify the law they wish to govern, as part of their freedom to contract, as long as there is some reasonable relationship with the state specified. *See* 11 Williston on Contracts § 1292A, at 15–16 (3d ed. 1968); *Barzda v. Quality Courts Motel, Inc.*, 386 F.2d 417 (5th Cir. 1967) (contract stated Florida law should govern). The Norrises had sufficient contacts with Florida to meet this requirement. In the absence of any overriding interest by the marital domicile in applying its own law, the general rule should be applied to antenuptial agreements. *See Ross v. Ross*, 233 App.Div. 626, 253 N.Y.S. 871, 880 (1931) (trial court determined that law of Quebec should be applied to invalidate a trust benefitting wife because the parties had stipulated in antenuptial contract that Quebec law would govern their future dealings; reversed on ground that reference to Quebec law in antenuptial agreement was not contractual, but merely descriptive of status of parties at time contract was executed). Since there is no con-

flict between District of Columbia law and Florida law, *see Burtoff v. Burtoff, supra,* we apply Florida law.

 The Florida case of *Posner v. Posner,* 233 So.2d 381 (Fla.1970), established that an antenuptial agreement regarding alimony is binding if made under proper conditions, these being the same conditions that had been laid out earlier in *Del Vecchio v. Del Vecchio,* 143 So.2d 17 (Fla.1962) (antenuptial agreement waiving widow's rights in husband's estate). The test begins with scrutiny of the fairness of the contract. If the

> provision made for the wife is, upon the face of the agreement, disproportionate to the means of the husband the burden . . . is cast upon the executor to show that the wife, at the time she executed the agreement, had or reasonably ought to have had *full* knowledge of the husband's property. [*Id.* at 20 (emphasis in original).]

In this case, the trial court found the agreement was not fair, because it made *no* provision for the wife, who was worse off after the marriage than before, in that she gave up monthly support at the time she entered the marriage. Accordingly, under Florida case law, appellant had the burden of proving that appellee had full knowledge of the extent of his wealth. *See Posner v. Posner,* 257 So.2d 530, 534–37 (Fla.1972) (husband who did not fully disclose his income failed to meet his burden).

 Appellant had the further burden of proving that the wife entered the agreement freely and voluntarily. Some factors involved in this assessment are the parties' respective experience in worldly affairs, *Del Vecchio v. Del Vecchio, supra* at 21, and their representation by independent counsel. *Lutgert v. Lutgert,* 338 So.2d 1111 (Fla.Dist.Ct.App.1976); *Plant v. Plant,* 320 So.2d 455 (Fla.Dist.Ct.App.1975) (fact that husband sprang agreement on wife on day before wedding one factor used to set aside agreement). The *Lutgert* court voided an antenuptial contract executed at the husband's insistence the day before the marriage during the final fitting of the rings.

The wife, reluctant to sign, talked on the phone to her husband's lawyers, but the court found as a matter of fact that the document was not changed as a result of that conversation. The court concluded that even though the woman was middle-aged and had some experience in marriage, her free will was overcome by her fiance's last minute ultimatum to execute the agreement or cancel the wedding plans.

 The record in this case contains sufficient evidence to support the trial court's application of *Lutgert* on the issue of voluntariness. Moreover, we uphold the trial court's conclusion that the husband failed to carry his burden on disclosure. Appellant contends that Florida common law on disclosure has been overturned by Fla.Stat. § 732.702(2) (1977) which states that "[n]o disclosure shall be required for an agreement, contract, or waiver executed before marriage." This provision relates to the following portion of the Estates of Decedents Law:

> Unless it provides to the contrary, a waiver of "all rights," or equivalent language . . . or a complete property settlement entered into after, or in anticipation of, separation, dissolution of marriage, or divorce, is a waiver of all rights to elective share, homestead property, exempt property, and family allowance by each spouse in the property of the other . . . . [*Id.* § 732.702(1).]

It is questionable whether this statute controls a situation like the present one where alimony, not rights in a decedent's estate, is in question. The statute makes no mention of alimony. However appellant reasons that the disclosure standard for antenuptial contracts relating to alimony as found in *Posner* merely incorporates the standard set out in *Del Vecchio,* a case involving an antenuptial contract establishing a widow's right. Since the standard in *Del Vecchio* has been supplanted by § 732.702, *In re Reed,* 354 So.2d 864 (Fla.1978), says appellant, the change automatically flows through to govern in the alimony context.

We need not resolve this question. Section 732.702 does not apply to this case

because the statute became effective January 1, 1976 and is to be applied in determining all substantive rights vesting after that date. Fla.Stat. § 731.011 (1977). The right at issue here is a continuation of the right to support which stems from the marriage relationship. It vested on December 15, 1975, the date of the marriage. Thus, we affirm the trial court's application of Florida common law, as found in *Posner* and its progeny, to void the antenuptial agreement here.

We find no abuse of discretion in the trial court's granting of alimony. *See Hunt v. Hunt*, D.C.App., 208 A.2d 731 (1965) (alimony award is in discretion of trial court and will only be overturned on a clear showing of abuse). Appellant contends that Mrs. Norris deserted him and disputes her claim that she was forced to leave. This question was one for the trier of fact, *Stephenson v. Stephenson*, D.C.App., 191 A.2d 248 (1963), and there was ample evidence to support the conclusion that the separation was voluntary rather than a desertion by either party. Furthermore, appellant misplaces his reliance on *Sanders v. Sanders*, Super.Ct.D.C., Civil No. D–1663–76, April 21, 1977 (party to divorce may not continue to pursue a legal remedy after refusing to answer questions relevant to the other party's defense). The wife's invocation of the Fifth Amendment as to her relations with another man will not bar her plea for alimony, because adultery is just one of a number of factors to be taken into consideration by the judge in determining whether to award alimony. *Payton v. Payton*, D.C.App., 187 A.2d 899 (1963). Finally, the award of a definite sum of money as alimony was not an abuse of discretion. The trial court may consider all the facts and circumstances in determining the amount of alimony, and the award must have a reasonable basis in the evidence. *Leibel v. Leibel*, D.C.App., 190 A.2d 821 (1963). This standard was met here. The award roughly replaced the amount of income foregone by appellee upon entering the marriage to Mr. Norris. Accordingly, the judgment is

*Affirmed.*