Sunja JOEL, Appellant,

v.

Clark JOEL, Appellee.

No. 87–1034.

District of Columbia Court of Appeals.

Argued March 22, 1989.
Decided June 14, 1989.

Neal E. Krucoff, Washington, D.C., for appellant.

Oliver D. Long, Washington, D.C., for appellee.

Before FERREN, BELSON and TERRY, Associate Judges.

FERREN, Associate Judge:

The trial court awarded Mr. Joel an absolute divorce on the ground of separation for a full year. The court also divided the marital assets and awarded Mrs. Joel alimony and attorney's fees. Mrs. Joel filed this appeal, arguing the trial court abused its discretion (1) in awarding alimony that was to be reduced automatically upon the happening of certain events and (2) in dividing the marital assets. We agree that the trial court abused its discretion in awarding alimony subject to automatic reduction based on specified, future occurrences; that approach (which includes the concept sometimes referred to as "rehabilitative alimony") is not permitted in this jurisdiction. We also agree that the court's order dividing the marital assets lacked specific enough findings of fact to justify the respective awards. We therefore reverse and remand for further proceedings.

I.

The Joels were married in South Korea in 1959. They have two children, born in 1961 and 1963, who were emancipated at the time the parties separated on June 24,

1985. In September 1985, Mr. Joel filed for divorce on the ground of voluntary separation. Mrs. Joel counter-claimed for divorce on the grounds of desertion and adultery. Mr. Joel filed a supplemental complaint alleging separation for one year, which the trial court granted on August 10, 1987.

Mr. Joel, who was 58 at the time of the divorce, received his Ph.D. in economics from the University of Wisconsin. At the time of the marriage, he was an assistant professor at the College of William and Mary. Thereafter, Mr. Joel held different positions with the United States Agency for International Development (USAID) and with private organizations in the field of economic assistance to less developed countries. The couple lived at various times during their marriage in Laos, El Salvador, Panama, Guatemala, Jamaica, and Washington, D.C. At the time of the divorce, Mr. Joel was working for USAID earning approximately $70,000 per year.

Mrs. Joel, who was 53 at the time of the divorce, received a high school degree in South Korea. Before her marriage, she worked for three years as a secretary in Korea. During the marriage, she raised the children and, only briefly, worked outside of the home. She served lunch at her children's school for two hours a day for nine months in 1969, and she worked for three months as a parking lot cashier in 1982.

At the time of the divorce, the couple had substantial assets, including three parcels of real estate and Mr. Joel's pension from the government. The trial court awarded Mrs. Joel $1,500 of Mr. Joel's share of the marital property to compensate her for money Mr. Joel had sent to third parties in South and Central America in connection with his marital misconduct. The trial court divided the rest of the property, including the pension, equally.

The trial court also awarded Mrs. Joel alimony in the amount of $2,278 per month. This amount, however, was to be adjusted automatically by reference to three different events. First, after one year, the alimony was to be reduced by $835 per month

because, according to the court, by that time Mrs. Joel would be able to find a job earning $10,000 per year. Second, when the couple's real property was sold, Mrs. Joel was to receive half of the proceeds; as a consequence, the monthly alimony award was to be adjusted by an amount equal to one-twelfth of six percent of the net proceeds of Mrs. Joel's half. Finally, when Mr. Joel received his monthly pension, one half was to go to Mrs. Joel, and her monthly alimony was to be reduced by a corresponding amount.

In sum, Mrs. Joel's alimony was to be reduced from time to time by: (1) substitution of assumed or imputed (if not actual) salary from employment beginning a year after the divorce, (2) substitution of income from some of Mrs. Joel's marital property (real estate), and (3) eventual distribution of some of Mrs. Joel's other marital property (Mr. Joel's pension).

## II.

■ Mrs. Joel contends the trial court erred by predetermining adjustments in her alimony. We agree. In *Posnick v. Posnick*, 96 U.S.App.D.C. 198, 199, 225 F.2d 37, 38 (1955), the United States Court of Appeals for the District of Columbia Circuit reversed an order which provided that the husband pay a debt he owed his wife and further provided that, upon final payment of the debt, "the allowance for maintenance made elsewhere in the judgment should terminate." The court held the trial judge had erred in predetermining that the maintenance should end. The appeals court reasoned that whether the wife would be able to collect the debt and whether her need for maintenance would change once the debt was collected "are matters about which we cannot speculate." *Id.*

This court applied *Posnick* in *King v. King*, 286 A.2d 234 (D.C.1972), where we held that a trial court order providing for the end of alimony payments after a year violated the statute, D.C.Code §§ 16–912, 16–914 (1967).[1] The trial court in *King*

1. The statute has not been changed in any relevant respect since 1967.

"was apparently influenced to its determination that alimony payments should cease after one year by its finding that the wife was 'capable of securing full-time employment when she in good faith seeks it.'" *Id.* at 238. We held that consideration of the wife's prospective economic condition "was entirely proper" in determining the amount of alimony but that imposition of a time limitation on the alimony award was improper because § 16–912 of the statute "provides for permanent alimony." *Id.*

Mr. Joel argues that *Posnick* and *King* are inapplicable here. He says that the trial court, in effect, ordered a base amount of permanent alimony of $925 per month—an amount Mr. Joel claims the court found sufficient to meet Mrs. Joel's needs—and then phased in that level of alimony over time. There is no evidence of record that the trial court analyzed the situation in that way. The court clearly concluded Mrs. Joel required $2,278 per month, absent a change of circumstances, but shifted to her the responsibility for supplying portions of that amount upon the passage of time and upon the distribution to her of certain marital property. Whatever merit there otherwise may be to that approach, *Posnick* and *King* forbid it. Were we to reconstruct the alimony award in the manner Mr. Joel suggests, we would abandon our review for abuse of discretion, *see McCree v. McCree,* 464 A.2d 922, 932 (D.C.1983), and substitute our judgment—including new fact-finding as to Mrs. Joel's basic needs—for that of the trial court. This we plainly

cannot do. *See Wright v. United States,* 508 A.2d 915, 919–20 (D.C.1986).[2]

Mr. Joel also argues that *Norris v. Norris,* 419 A.2d 982 (D.C.1980), establishes the trial court's power to determine future adjustments in alimony. We disagree. In *Norris,* the trial court awarded the wife a definite sum of money as alimony, payable in one installment of $11,000 and eighteen monthly payments of $400. *Id.* at 984. Although the award was called "alimony," it should be characterized, more realistically, as the payment of a debt or an award of marital property payable over time rather than at once. This award was intended as an approximate replacement of the alimony payments the wife lost from her former husband upon entering her marriage to Mr. Norris. *Id.* at 986. We held that the trial court, having considered all the facts and circumstances, did not abuse its discretion in awarding a definite sum of money payable over time.[3]

In the present case, the trial court did not award Mrs. Joel a lump sum of money meant to repay a debt or to reflect an award of marital property, as in *Norris;* rather, the court ordered reduction of her alimony award based on assumptions about future events, as in *Posnick* and *King.* Mrs. Joel's alimony is to be reduced upon the passage of a year, the sale of certain property, and the commencement of the pension—the latter two instances reflecting a substitution of income from, or the distribution of, marital property in lieu of alimo-

2. Without expressly saying so, Mr. Joel would have us resolve this case under the traditional "rule that, in reviewing the decision of a lower court, it must be affirmed if the result is correct 'although the lower court relied upon a wrong ground or gave a wrong reason.'" *S.E.C. v. Chenery Corp.,* 318 U.S. 80, 88, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943) (quoting *Helvering v. Gowran,* 302 U.S. 238, 245, 58 S.Ct. 154, 158, 82 L.Ed. 224 (1937); *see Duddles v. United States,* 399 A.2d 59, 64 (D.C.1979) ("[T]his court can affirm the denial of a motion to suppress if, for any reason, the ruling is correct...."). This rule, however, "concerns non-discretionary rulings, *i.e.,* legal rulings which, to be error-free, have only one permissible outcome." *Wright v. United States,* 508 A.2d 915, 920 (D.C.1986) (citing *Ibn-Tamas v. United States,* 407 A.2d 626, 636 (D.C.1979)). "In contrast, ... a discretionary ruling—with its area of choice and its essen-

tial trial court perspective—does not 'inevitably' lead to only one acceptable result." *Wright,* 508 A.2d at 920 (citing *Johnson v. United States,* 398 A.2d 354, 363–64 (D.C.1979)). Because the setting of an alimony award is not an instance where the trial court, in an exercise of discretion, has "but one option," *Johnson,* 398 A.2d at 364, the parties are entitled to an exercise of trial court discretion rather than to a determination by this court.

3. *Finch v. Finch,* 378 A.2d 1092 (D.C.1977), also cited by Mr. Joel, is similarly inapposite. We held there that an equal division of the couple's marital home, which the wife was allowed to occupy for three years after the divorce if she paid all the related bills, was a just and equitable division of the marital property.

ny. While the trial court had discretion in awarding alimony to consider Mrs. Joel's prospective economic condition, *see King*, 286 A.2d at 238; *see also McEachnie v. McEachnie*, 216 A.2d 169, 170 (D.C.1966) (listing factors relevant to setting alimony award), the court was required to make any monthly award of alimony a permanent, fixed amount for an indefinite period of time; the trial court could not properly build in later reductions by speculating about the parties' respective needs and abilities to pay in the future. *See Posnick*, 96 U.S.App.D.C. at 199, 225 F.2d at 38. The court's error in believing it could do so had a "substantial impact" on the award payable to Mrs. Joel and thus was of a magnitude requiring reversal—an abuse of discretion. *Johnson v. United States*, 398 A.2d 354, 366 (D.C.1979). Mr. Joel, of course, will remain free to move for modification of any alimony decree at any time if he can show changed circumstances. *See Posnick v. Posnick*, 100 U.S.App.D.C. 37, 38, 241 F.2d 442, 443 (1957) (striking part of order that automatically terminated alimony, but not foreclosing possibility of modification); *see also Tydings v. Tydings*, 349 A.2d 462, 463 (D.C.1975) (setting forth standard for modification of alimony award).

■ Although the trial court abused its discretion in framing the alimony order, there is still the question of the appropriate remedy. In *Posnick*, the court struck only the time limitation on the order, leaving open the possibility of future modification if warranted. 96 U.S.App.D.C. at 199, 225 F.2d at 38. In *King*, however, this court struck the order entirely and remanded for reconsideration. We reasoned that the "time limitation was a product of the court's consideration of the wife's prospective economic condition"; therefore, merely to strike the time limitation would "limit substantially the effect of a relevant factor, the parties' 'respective economic conditions—both present and prospective' on the initial award." 286 A.2d at 238.

The present case is more like *King* than *Posnick*. The trial court framed the order by considering Mrs. Joel's potential employment, as well as the anticipated income from her share of the marital assets that were not then available to her. These two considerations are relevant in setting an appropriate level of alimony, and thus the court should have an opportunity to use them. We therefore remand for a new determination of alimony.[4]

### III.

■ Mrs. Joel also contends the trial court abused its discretion in dividing the marital property. Alternatively, she argues the trial court's award is not supported by the record. Mrs. Joel stresses, more specifically, that in determining each party contributed equally to acquiring the assets, and then in dividing the assets equally, the trial court ignored a number of the factors specified in D.C.Code § 16-910(b) (1981). We agree that the trial court's order does not provide a sufficient basis for reviewing the division of marital property; therefore, we must remand for more specific findings of fact on that issue.

The trial court made certain findings about the duration of the marriage, the ages and health of Mr. and Mrs. Joel, and their occupations and employability—all factors relevant under D.C.Code § 16-910(b) (1981). The trial court also found:

> The Defendant [Mrs. Joel] has made substantial non-economic contributions to the family unit and to Plaintiff's [Mr. Joel's] career. The value of Defendant's non-economic contributions is equal to that of Plaintiff's economic contributions.

The trial court concluded: "Having reviewed the factors listed in D.C.Code Section 16-910(b) (1981), each party is entitled to a 50% share of the marital property."

"To comply with § 16-910 [(b)], the court must consider all relevant factors, which vary in each case, and arrive at a disposition based upon an assessment of

---

**4.** Mrs. Joel further argues that the trial court's determination that she could earn $10,000 per year was not supported by the record. Because we remand for reconsideration of the entire alimony award, we need not reach this issue.

the totality of the circumstances." *Bowser v. Bowser,* 515 A.2d 1128, 1130 (D.C.1986). "[T]he trial court's findings of fact, conclusions of law and judgment, taken together, must present an integrated, internally consistent and readily understood whole." *Id.; see also Pimble v. Pimble,* 521 A.2d 1173, 1174–75 (D.C.1987).

The trial court's findings do not present a sufficient record for review. The court determined that the parties contributed equally to the acquisition of the assets but then appears to have stopped there, without considering or explaining other factors relevant to the property distribution, all of which appear to be either neutral or to favor Mrs. Joel. Given the court's conclusory statement that it considered all the factors in § 16–910(b), we have no way of assessing whether the decision is supported by the record. We therefore remand for further findings as to the division of marital property, with authority to order the same or a different division as indicated.

*Reversed and Remanded.*