Carolyn A. CARTER, Appellant,

v.

James L. CARTER, Appellee.

Nos. 88–FM–1204, 91–FM–786.

District of Columbia Court of Appeals.

Argued Oct. 18, 1990.

Decided Following Remand Sept. 29, 1992.

Delores A. Young, Washington, D.C., for appellant.

Charles H. Mayer, Washington, D.C., for appellee.

Before SCHWELB and WAGNER, Associate Judges, and BELSON, Senior Judge.

SCHWELB, Associate Judge:

At the conclusion of a bitterly contested divorce trial which featured disputes over alimony, distribution of assets, and counsel fees, Judge Virginia Riley issued a judgment of divorce in which she resolved most of the questions raised by the parties. Unfortunately, Judge Riley died shortly thereafter. Mrs. Carolyn Carter (the wife) filed a timely appeal to this court from Judge Riley's decision.

The case was argued on October 18, 1990. On March 29, 1991, this court entered an unpublished order sustaining in substantial part Judge Riley's disposition of the case. We remanded the record, however, for further proceedings regarding four specific issues.

On remand, the case was assigned to Judge Nan R. Huhn. Judge Huhn held a hearing on the remanded issues and subsequently entered three separate written orders in which she decided all of the matters which remained in controversy. These orders are now before us for review.[1] We

remand for further findings on the issues of alimony and counsel fees. In all other respects, we affirm the trial court's decision, largely for the reasons stated by Judge Huhn.

I

Following this court's remand of the record, the wife filed an "Affidavit of Bias or Prejudice" against Judge Huhn. In her affidavit, the wife represented primarily that at the memorial service following Judge Riley's death, Judge Huhn delivered the eulogy. In her remarks, according to the affidavit, Judge Huhn referred to her admiration for Judge Riley. The wife claimed that Judge Huhn would be required by this court's remand to reconsider some of Judge Riley's rulings, and that

> Appellant verily believes that Judge Huhn is inherently bias [sic] and prejudiced against the legal and equitable merits of the Appellant's causes on remand; because of Judge Huhn's deference to her admiration for Judge Riley's failing health—especially during the last case over which her Honor presided (i.e., the Appellant's trial).

Judge Huhn declined to disqualify herself, holding that "the Defendant's Affidavit of Bias or Prejudice contains no legal or factual basis to support the contention that this Court recuse itself from this case."

■ Superior Court Civil Rule 63–I provides that wherever a party has filed a "sufficient" affidavit alleging that the assigned judge "has a personal bias or prejudice against the party or in favor of any adverse party," that judge shall proceed no further therein. The question presented is whether the wife's affidavit in this case was "sufficient" within the meaning of Rule 63–I. We are satisfied that it was not.

---

1. In this court's original order of March 29, 1991, we directed counsel for the wife to notify this court within ten days of the resolution of the remaining issues. Through an apparent misunderstanding, this court was not notified as required, and the wife instead appealed separately, and apparently prematurely, from the first of Judge Huhn's three orders. This was appeal No. 91–FM786. When the sequence of events was ultimately brought to this court's attention, No. 91–FM786 was consolidated with the original appeal, No. 88–FM1204.

This court has applied a three-part test for determining the legal sufficiency of such an affidavit:

 1. The facts must be material and stated with particularity;

 2. The facts must be such that, if true they would convince a reasonable [person] that a bias exists.

 3. The facts must show the bias is personal as opposed to judicial, in nature.

*In re Bell,* 373 A.2d 232, 234 (D.C.1977) (adopting the standard of the Third and Fifth Circuits); *see also In re Evans,* 411 A.2d 984, 994 (D.C.1980) (citing *In re Bell* ). Even if it were Judge Huhn's function, under this court's remand order, to pass on the merits of Judge Riley's rulings—and it is not—we do not believe that any reasonable person would be persuaded that a judge who delivered the eulogy for a deceased colleague would thereby forfeit her impartiality. Indeed, affidavits alleging bias or prejudice based on a judge's prior associations have been held insufficient in cases where an inference of prejudice would have been far more supportable than here. *See, e.g., Eisler v. United States,* 83 U.S.App.D.C. 315, 320, 170 F.2d 273, 278 (1948);[2] *United States v. Story,* 716 F.2d 1088, 1090–91 (6th Cir.1983); *Price v. Johnston,* 125 F.2d 806, 811–12 (9th Cir.), *cert. denied,* 316 U.S. 677, 62 S.Ct. 1106, 86 L.Ed. 1750 (1942).

 In the present case, there is no indication that Judge Huhn had ever had any contact with Mrs. Carter, or even with Mrs. Carter's counsel, prior to hearing this case.[3] There is no evidence of bias from an extrajudicial source. Judge Huhn's warm feelings toward Judge Riley, which were doubtless shared by many District of Columbia judges, do not constitute a circumstance requiring recusal.[4] Indeed, as in *Browner v. District of Columbia,* 549 A.2d 1107, 1113 (D.C.1988), the arguments for recusal here are "completely devoid of merit."

II

During their marriage, the parties' principal asset was the marital residence. In her judgment of divorce, Judge Riley directed that the residence be sold, that the wife receive a ⅝ share of the proceeds, and that the husband receive the remaining ⅜ share. The judge also ordered the husband to pay the wife $400 per month in "temporary alimony" until the home was sold and the wife received her share.

In our remand order of March 29, 1991, we vacated this portion of Judge Riley's decision on the grounds that

 [d]uring the pendency of this appeal, this court explicitly held in *Joel v. Joel,* 559 A.2d 769 (D.C.1989), that a trial judge is without authority to award alimony which will be "subject to an automatic reduction based on specified future occurrences." *See also Posnick v. Posnick,* 96 U.S.App.D.C. 198, 199, 225 F.2d 37, 38 (1955) (per curiam); *King v. King,* 286 A.2d 234 (D.C.1972). Accordingly, on remand, the trial court is directed to enter an order consistent with *Joel* and the authorities on which *Joel* relies.

We added that

 [i]n determining what, if any permanent alimony should have been awarded in

---

**2.** The Supreme Court granted *certiorari* in the *Eisler* case, 335 U.S. 857, 69 S.Ct. 130, 93 L.Ed. 404 (1948), but Eisler fled the country and the merits were not reached. *Eisler v. United States,* 338 U.S. 883, 70 S.Ct. 181, 94 L.Ed. 542 (1949).

**3.** The judge stated to the wife's attorney at the hearing that "I don't know that we've ever had dealings before."

**4.** The wife's counsel also complains that Judge Huhn was rude to her during the hearing. The transcript reveals that some sharp words were indeed said. At one point, Judge Huhn warned the attorney that she would incarcerate her for contempt if the attorney did not show the court respect. When counsel denied being disrespectful but apologized "if in fact you believed I was," the judge remarked that "the tone of your voice ... and the expression on your face right now, absolutely contradict the apology."

 We are in no position to second-guess, on the basis of a transcript, Judge Huhn's assessment of counsel's manner, but it is readily apparent that the judge's annoyance with the wife's attorney, which was evidently precipitated by arguably contradictory statements under oath in the Affidavit of Bias and Prejudice, did not represent bias from an extrajudicial source.

lieu of the temporary alimony, the trial court must base its finding on the situation that existed as of the time for which the award is now being retroactively made. The court may, however, entertain an appropriate application by either party for a modification of the amount awarded for the initial period.

In her June 18, 1991, order following the remand, Judge Huhn ruled preliminarily that

> the temporary alimony awarded under Judge Riley's Order of December 4, 1987, terminated upon the December 15, 1989, disbursement of the proceedings from the sale of the parties' home. Though the automatic termination of alimony was in error, the [husband], at that time, had no legal or equitable basis to file a motion to modify alimony. Given these circumstances it would be inequitable for the court to deny the [husband] an opportunity to bring a motion for modification of alimony, *nunc pro tunc* to December 15, 1989. For purposes of considering [the husband's] motion, the relevant inquiry is the financial status of the parties subsequent to the December 15, 1989 disbursement of proceeds from the sale of their home.

After the parties had an opportunity to present evidence as to their financial circumstances at the time of disbursement, Judge Huhn ruled as follows:

> An alimony award "can be modified only upon a showing of a substantial and material change in the conditions and circumstances of the involved parties since the entry of the decree." *Nelson v. Nelson,* 379 A.2d 713, 715 (D.C.1977) (citation omitted). The affidavits submitted by the parties, and opposition thereto, support [the husband's] oral motion to modify, as there has been a substantial and material change in the parties' financial resources since the entry of Judge

Riley's original order. The [wife] received approximately $130,000 from the home sale, while the [husband] received approximately $80,420. In addition, this decision is consistent with the intention of Judge Riley, whose original order had conditioned the termination of the temporary alimony award upon the sale of the parties home, and with the March 29, 1991, Order of the District of Columbia Court of Appeals.

■ Relying on the well-established principle that an order reducing alimony may not be made retroactive beyond the date when application for such relief was made, *Rhodes v. Gilpin,* 264 A.2d 497, 500 (D.C. 1970); *see* also the leading case of *Kephart v. Kephart,* 89 U.S.App.D.C. 373, 380, 193 F.2d 677, 684 (1951), *cert. denied,* 342 U.S. 944, 72 S.Ct. 557, 96 L.Ed. 702 (1952), the wife argues that Judge Huhn's *nunc pro tunc* order terminating alimony as of December 15, 1989, was contrary to law. She urges this court simply to strike the time limitation on the husband's obligation to pay alimony. Were we to do so, the husband would be required to pay the wife $400 per month long after an alleged substantial and material change in the circumstances of the parties.

As we noted in *King, supra,* 286 A.2d at 238, and reiterated in *Joel,* 559 A.2d at 772, the disposition proposed by the wife would require the court to ignore the parties' respective economic conditions at the relevant times. If an intervening event making one spouse comparatively richer or poorer were ignored, then the resulting order would necessarily be inappropriately skewed. Accordingly, both in *King* and in *Joel,* this court struck the alimony award in its entirety, and remanded for a new determination of alimony. *King, supra,* 286 A.2d at 238; *Joel, supra,* 559 A.2d at 772.[5] We follow these decisions, and there is thus

---

**5.** In *Posnick,* the court, without discussing the issue presently under consideration, simply ordered that the provision of the decree terminating maintenance upon the husband's payment of certain debts "was erroneous and should terminate." 96 U.S.App.D.C. at 199, 225 F.2d at 38. The trial judge, on remand, declined to disturb the amount of support, feeling precluded from doing so by the appellate court's order. Subsequently, however, in *Posnick v. Posnick,* 100 U.S.App.D.C. 37, 38, 241 F.2d 442, 443 (1957) (per curiam) (*Posnick II*) the court reversed, holding that the earlier decision "was not intended so to limit the District Court's power to pass on questions of maintenance."

no obstacle to the judge's determination *de novo* when and how much alimony the husband should be required to pay.

Moreover, as Judge Huhn noted, it would be inequitable to preclude the husband from seeking modification *nunc pro tunc.* Under *Kephart* and its progeny, one must make a timely request for a modification before, not after, an installment sought to be reduced has become due. In the present case, however, the duty to pay temporary alimony automatically lapsed, by the terms of Judge Riley's order, upon the distribution of the proceeds of the sale. The husband could not request a reduction of alimony on account of changed circumstances as of that date, because he was then no longer paying any alimony; under the divorce decree, there was no alimony obligation which could be reduced. To hold that Mr. Carter is now barred from challenging the provision for alimony, because he failed to protest at a time when there was nothing to protest about, would effectively deny him the opportunity to present evidence of changed circumstances to the court.

■ The Supreme Court has repeatedly held that due process includes an opportunity, granted at a meaningful time and in a meaningful manner, for a hearing appropriate to the nature of the case. *See, e.g., Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 437, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265 (1982); *See also Harris v. District of Columbia Comm'n on Human Rights,* 562 A.2d 625, 626 (D.C.1989). Were we to accept the wife's arguments, the husband would be effectively denied any opportunity to challenge the continuing appropriateness of the temporary alimony order from the date of disbursement of the proceeds of the sale of the residence until, at least, the

initial remand by this court.[6] We therefore reject the wife's contention that Judge Huhn effected an improper retroactive modification of the husband's alimony objection.

### III

■ Judge Huhn found, reasonably in our view, that the distribution to the wife of approximately $130,000—almost $50,000 more than the husband received—represented a significant and material change of circumstances. The difference of $50,000 between the two shares, even without giving any consideration to interest thereon, would be enough to pay the wife $400 every month for ten years. Moreover, the wife acknowledged that, at least during the early months after the home was sold, she was receiving approximately $800 per month in interest from the proceeds of the sale.

The wife claims, however, that the sum remaining from the sale has been severely depleted. She maintains that much of the principal had to be used to meet monthly expenses, which allegedly exceeded her modest income. The husband responds that the wife has squandered most of the money distributed to her, and that any financial problems are therefore self-induced.[7] *See Tydings v. Tydings,* 349 A.2d 462, 463–64 (D.C.1975) (per curiam).

■ Although Judge Huhn apparently considered the affidavits submitted by the parties in relation to their respective financial circumstances,[8] she made no specific findings as to the condition of each spouse as of the date of distribution. We think that a total termination of alimony for a purportedly ill wife after thirty years of

---

**6.** A party may be relieved of the consequences of an untimely filing if he or she has been "lulled" into inaction as a result of some action taken by the court. *See, e.g., Frain v. District of Columbia,* 572 A.2d 447, 450–51 (D.C.1990). In the present case, there was more than "lulling"; Judge Riley's time limitation on alimony rendered inaction on the husband's part inevitable, for there was simply no action to be taken; a party simply cannot ask the court to reduce an obligation of zero.

**7.** The husband's brief in this court contains the following passage:

[the wife] showed such profligate spending that in a period of 18 months she had spent all but about $13,000 of the money. The expenditures included attorney's fees to Ms. Young in the amount of $29,000. These attorney's fees are very excessive....

**8.** The judge stated in a footnote to her most recent order that the information provided "did give the [c]ourt some insight into [the wife's] lifestyle since the distribution of the proceeds of the sale." The husband's counsel construes this primarily as a comment on the amount the wife allegedly paid in counsel fees.

marriage, based on an oral motion for modification, requires more comprehensive findings than the trial judge made on remand. *See, e.g., Joel, supra,* 559 A.2d at 773.

## IV

One of the questions with respect to which we initially remanded the record was the wife's request for counsel fees, an issue which Judge Riley had not explicitly addressed. In her order of June 18, 1991, Judge Huhn wrote that

> [t]he [wife] failed to support her motion for attorney's fees. Neither an accounting of services and costs, nor affidavits in support of any other factors that must be shown to support a motion for attorney's fees, appear anywhere on the record of this case.

Judge Huhn reiterated these grounds for denial in her order of August 23, 1991. On an earlier occasion, however, Judge Huhn had orally stated:

> Now *I am not ruling—let me make this record clear, I am not denying your motion based on the fact that you to date in response to my pleading did not submit these papers,* I'm not ruling, I pointed that out merely to show that for five years it hasn't been done, but I am not ruling based on that, I am ruling based on '87/'88 rulings by Judge Riley, and my looking back at the conditions and situations there in light of the law, that's what my ruling is based on. *It was just an aside, the fact that [you] still hadn't filed those things.*

(Emphasis added).

■ An award of counsel fees is discretionary with the trial court. *Tydings v. Tydings,* 567 A.2d 886, 889–90 (D.C.1989). It involves two separate questions: (1) whether to award any fees (and to whom) and, (2) if so, in what amount. *Id.* The

amount demanded by the party seeking the award is not relevant to the first step. Absent some showing of a violation of an order or rule of court—and none is claimed here—we do not believe that an award could properly be denied because the wife had not presented her case on the second question before an answer had been provided to the first.

Whether the "conditions and situations" confronting Judge Riley warranted a denial of counsel fees, on the other hand, is an entirely different question. Since Judge Huhn rested her written ruling on a different ground, she made no findings as to the substantive reasons for denying the wife an award. On remand therefore, the judge must also make appropriate findings and conclusions with respect to the question of counsel fees.

## V

For the foregoing reasons, the case is remanded to the trial court for further proceedings regarding the issues of alimony and counsel fees. In all other respects, the judgment issued by Judge Riley, as modified by the orders of Judge Huhn, is affirmed.

*So ordered.*[9]

---

9. In a footnote to our order of March 29, 1991, we stated that

> [t]he parties in this case are not wealthy, and we apprehend that further litigation may cost them more than the amounts in controversy. *See Swift v. Swift,* 566 A.2d 1045, 1047 n. 2 (D.C.1989). We therefore urge the parties and their counsel to attempt to resolve the remaining issues by negotiation, with or without the assistance of any available mechanisms for alternative dispute resolution.

The record on remand tends to vindicate the foregoing observation, and we hope that the parties will both take it to heart.