Lawrence J. **BERNARD**, Jr., Appellant,

v.

Nancy C. **BERNARD**, Appellee.

No. 98–FM–617.

District of Columbia Court of Appeals.

Argued April 20, 1999.

Decided June 3, 1999.

Lawrence J. Bernard, Jr., appellant pro se.

Bart Colombo, Falls Church, VA, was on the brief, for appellant.

Neal E. Krucoff, Washington, DC, for appellee.

Before STEADMAN and FARRELL, Associate Judges, and MORRISON, Associate Judge, Superior Court of the District of Columbia.*

FARRELL, Associate Judge:

Mr. Bernard appeals from the trial court's judgment dividing marital property and debts and awarding alimony, arguing that the trial court failed to consider all of the relevant factors required by D.C.Code § 16–910(b) (1997) and our case law.[1] Although in most respects we find no fault with the trial judge's exercise of discretion, see *Pimble v. Pimble,* 521 A.2d 1173, 1174 (D.C.1987) ("The trial court has broad discretion [in distributing marital property].");  *Leftwich v. Leftwich,* 442 A.2d 139, 142 (D.C.1982) ("The award of alimony is a matter committed to the sound discretion of the trial court. . . ."), one factor unmentioned in the judge's opinion—and, to a lesser degree, a second—raises enough concern about the soundness of the ultimate disposition that we must vacate and remand for explicit consideration of it. Our recital of the evidence is largely confined to those two factors.

## I.

The Bernards were married on October 22, 1980. They subsequently held title to a home in the District as tenants by the entireties[2] and had two children. From the beginning, according to Mrs. Bernard, "money matters [were] a concern" in the marriage particularly because, as a self-employed lawyer, Mr. Bernard never had a steady income.[3] Mr. Bernard regularly owed federal income taxes when the couple filed their annual joint returns. His inability to pay their 1992 taxes was the final straw causing Mrs. Bernard to elect to file separately starting in the 1993 tax year, and to move out with the children at the end of the 1993–1994 school year. According to Mr. Bernard, he did not want them to leave but there was "nothing [he] could do" about it. Mrs. Bernard, who viewed her husband's fortunes as "a sinking ship," claimed that she still "wanted to work on things," but she moved with the children to Pennsylvania and took up residence in an unoccupied home owned by her mother. On appeal, Mrs. Bernard concedes that Mr. Bernard raised the issue of "desertion" at trial and that she "did not argue

---

* Sitting by designation pursuant to D.C.Code § 11–707(a) (1995).

1. He does not contest the decree of divorce.

2. The parties stipulated at trial that the fair market value of the home was $215,000, with a principal mortgage balance of $179,000. Thus, $36,000 in equity remained in the home.

3. Mr. Bernard agreed that "[money matters] would come up from time to time almost from the beginning of the marriage."

that a finding of desertion was not justified."

In Pennsylvania, Mrs. Bernard began working as a legal secretary. Mr. Bernard continued to work as a lawyer, but owing to a change in FCC litigation practice (his specialty) which he predicted would decrease his "practice [to] ... about 30 percent of what it was before," he claimed he would "have to find something else to do."[4] At trial, Mr. Bernard contended that he owed individual tax obligations totalling some $50,000 incurred between 1993 and 1995. His financial statement submitted to the trial court attests to that approximate amount. Mrs. Bernard concedes on appeal that she did not dispute either the fact of his tax obligation or the amount. At the time of their divorce, the Bernards were subject to an IRS levy for unpaid 1992 taxes in the amount of $15,453. Their marital credit card debt totalled $30,599.

The trial judge awarded monthly alimony of $264 to Mrs. Bernard and ordered Mr. Bernard to pay 92% of both the 1992 tax liability and the credit card debt. He awarded sole ownership of the home to Mr. Bernard, but required him to pay one half of the equity in the home ($18,000) to Mrs. Bernard.

## II.

■ To arrive at a distribution of marital property "that is equitable, just and reasonable," D.C.Code § 16–910(b) (1997), the trial judge must "consider[ ] all relevant factors including, but not limited to" those enumerated in that section. Id.[5] "[R]elevan[ce]," of course, is a function of the particular evidence before the trial court and the issues arising therefrom, see Bowser, supra note 5, 515 A.2d at 1130 (the relevant factors will "vary in each case"), but subject to this limitation, the trial judge must engage in a "conscientious weighing of all relevant factors, statutory or otherwise, before reaching a conclusion about the proper distribution of property." Burwell v. Burwell, 700 A.2d 219, 225 (D.C.1997).

■ Mr. Bernard argues that the trial judge failed to consider his individual tax obligation of some $50,000 in finding him liable for 92% of the marital credit card and joint tax debt and giving him only 50% of the equity in the home. At trial, he testified to his tax obligation and pointed to his financial statement confirming that amount.[6] As we have said, Mrs. Bernard concedes that she did not dispute either the liability or the amount at trial.

■ A party's "debts" are a factor enumerated in § 16–910(b) and are relevant to the court's allocation of property and marital debt. Cf. Gassaway v. Gassaway, 489 A.2d 1073, 1077 n. 10 (D.C.1985) ("The court may consider a spouse's nonmarital property in evaluating ... how much of the marital property should be awarded to the other spouse."). The trial judge's opinion does not mention Mr. Bernard's individual tax liability. Given its size, we do not think the judge could properly ignore it in assessing the husband's ability both to maintain himself and to meet the obligations imposed by the distribution and award of alimony. See, e.g., Burwell, 700 A.2d at 224–25 (remanding, in part, for consideration of "the overall financial statuses" of both parties in achieving a fair distribution of marital property). And to assume that he considered it, as Mrs. Ber-

---

4. The trial judge did not abuse his discretion in declining to give weight to this prediction. If the decline in practice does materialize, Mr. Bernard is free to seek a modification of his alimony obligation based on a change of circumstances. See, e.g., Kieffer v. Kieffer, 348 A.2d 887, 889 (D.C.1975).

5. Marital debt is also distributed in accordance with § 16–910. See Bowser v. Bowser, 515 A.2d 1128, 1131 (D.C.1986).

6. The financial statement lists the debt as "$75,000," which he then changed to "Approx. 50,000" for the tax years 1993–96. He testified that he had succeeded in paying his tax arrearage of $26,000 for 1996.

nard urges us to do, without any indication of how, is tantamount to saying he could ignore it. This is not to say that the judge must modify the apportionment in light of the tax obligation. The judge may yet determine that Mr. Bernard's earning potential compared to Mrs. Bernard's outweighs the significance of his individual debt; the judge may also consider the reasons Mr. Bernard incurred—or allowed himself to incur—a personal debt jeopardizing his ability to meet other obligations; and, of course, the judge may insist on better documentation of the tax liability to begin with. We require only that the judge consider the factor expressly, explaining how. *See Negretti v. Negretti,* 621 A.2d 388, 390 (D.C.1993); *Joel v. Joel,* 559 A.2d 769, 773 (D.C.1989). Doing so is necessary to achieve the "integrated" and comprehensive decision our cases require. *Bowser, supra* note 5, 515 A.2d at 1130.[7]

### III.

Mr. Bernard further argues that the judge in awarding alimony failed to address his claim that Mrs. Bernard voluntarily left the household—in short, deserted him. Although the argument has a somewhat antiquarian cast in the era of no-fault divorce, we have held that desertion is still "one of a number of factors to be taken into consideration by a judge in determining whether to award alimony" and inferentially how much. *Kessler v. Kessler,* 397 A.2d 932, 935 (D.C.1979). Admittedly, the issue in *Kessler* was whether

the trial court had correctly ruled that desertion "barred payment of *any* alimony" (emphasis added), *id.;* so technically we did not have to decide whether, after the elimination of fault as a divorce requirement, it still makes sense to link desertion to alimony even as a "factor." Nonetheless, we were explicit in stating that desertion, "whether controlling or not [we plainly held it was not], ... is a factor which must be considered in the judgment of what would be a just and proper determination of both whether to award alimony and if so, the amount thereof." *Id.* at 936. As a division of the court, we cannot disturb that requirement. *See M.A.P. v. Ryan,* 285 A.2d 310 (D.C.1971).

As pointed out previously, Mrs. Bernard concedes that she did not challenge her husband's claim of desertion at trial.[8] Again we cannot merely assume in these circumstances that the trial judge considered the evidence of desertion without saying so and took it into account in making the award. As in the case of Mr. Bernard's tax debt, the judge may decide that this factor is outweighed or subsumed by other considerations,[9] but he must address it specifically where desertion was raised and not contested and the *Kessler* case was called particularly to his attention.

We therefore vacate the judgment and remand the case for the trial court (1) to decide what effect, if any, Mr. Bernard's tax obligation should have on the distribution of the marital debts and property, as

---

7. Mr. Bernard's tax obligations are also relevant to the determination of alimony. *See McEachnie v. McEachnie,* 216 A.2d 169, 170 (D.C.1966) (parties' "respective financial positions, both past and prospective" are primary factors in alimony determination).

8. *See* Br. for Appellee at 17 ("Mrs. Bernard presented no evidence of constructive desertion [by Mr. Bernard] and scant evidence that her husband consented to her leaving."); *see also Stolar v. Stolar,* 359 A.2d 597, 600 n. 6 (D.C.1976).

9. Even in the days when desertion was one of the limited grounds on which divorce could

be ordered, it was only one of a number of factors bearing on the issue. *See Quarles v. Quarles,* 86 U.S.App.D.C. 41, 42, 179 F.2d 57, 58 (1949). Since the adoption of no-fault divorce in 1977, there is even less reason to make it dispositive. As we have stressed in the analogous area of adultery, the trial court retains broad discretion in limiting inquiry on the issue. *See Hairston v. Hairston,* 454 A.2d 1369, 1372 n. 4 (D.C.1983); *Murville v. Murville,* 433 A.2d 1106, 1108–09 (D.C.1981). Indeed, in the present statutory and social context, the factor of desertion would appear to draw any relevance from its possible effect on the monetary and needs considerations listed in *Quarles.*

well as alimony, and (2) to decide similarly with respect to the evidence of desertion as bearing on alimony.

*So ordered.*