James M. SINGER, Appellant,

v.

Carol Posnick SINGER, Appellee.

No. 90–FM–779.

District of Columbia Court of Appeals.

Argued March 23, 1993.
Decided May 4, 1993.

Carl V. Angelis, Washington, DC, for appellant.

Kirk Callan Smith, Washington, DC, for appellee.

Before ROGERS, Chief Judge, and FERREN, Associate Judge, and KERN, Senior Judge.

KERN, Senior Judge:

Appellant-husband, a resident of New York, brought an action in the trial court for divorce from appellee-wife. He appeals from the judgment entered after trial insofar as it ordered him to pay her (1) $9,125 "as her equitable distribution share in the proceeds of the sale of their marital residence," (2) alimony in the amount of $500 per month, and (3) attorney's fees in the amount of $2,500. We affirm the court's judgment as to the distribution of the proceeds of the sale of the marital home and the award of counsel fees. However, we remand the case to the trial court for a further hearing and further findings as to the net income of appellant and his ability to pay alimony. *See Ealey v. Ealey*, 596 A.2d 43, 46 (D.C.1991); *Mumma v. Mumma*, 280 A.2d 73, 76 (D.C.1971).

Appellant, citing our decision in *Turner v. Taylor*, 471 A.2d 1010 (D.C.1984), first argues [Reply Brief at 8] "that because the property had been sold nearly nine years prior to trial, the trial court had no authority to award Mrs. Singer compensation pursuant to a distribution of marital property." Our decision in *Turner* is inapposite to the instant case. There, we concluded that the trial court lacked statutory authority in a divorce action to award damages to the wife because the husband had destroyed her clothing, linens, and furniture prior to the commencement of the divorce action.

■ Here, the parties were engaged and commenced living together in 1973 in a house presented to them as a gift by appellant's parents upon their engagement to be married. In 1979, the parties entered into a ceremonial marriage. In 1981, the parties separated and the house was sold. The trial court found that the marital home, *viz.*, the house in which they had been living since 1973, and as husband and wife since 1979, was sold for a profit of $36,500 which profit went entirely to appellant.[1] The trial court has statutory authority under D.C.Code § 16–910 (1989 Repl.)[2] to distribute "in a manner that is equitable, just and reasonable" all the property accumulated during the marriage. We conclude that the court in the instant case had jurisdiction pursuant to the statute to distribute between appellant and appellee the proceeds from the sale of the marital home

---

1. The court expressly found [R. 161] that appellant's parents gave the profits from the sale of the marital home to appellant over the years between 1981 and the time of the trial.

2. The statute provides in pertinent part:
   Upon the entry of a final decree of annulment or divorce in the absence of a valid antenuptial or post-nuptial agreement or a decree of legal separation disposing the property of the spouses, the court shall:
   (a) assign to each party his or her sole and separate property acquired prior to the marriage, and his or her sole and separate property acquired during the marriage by gift, bequest, devise, or descent, and any increase thereof, or property acquired in exchange therefor; and
   (b) distribute all other property accumulated during the marriage, regardless of whether title is held individually or by the parties in a form of joint tenancy or tenancy by the entireties, in a manner that is equitable, just and reasonable....
   D.C.Code § 16–910.

in which they had lived as husband and wife during their marriage as a result of receiving it as a gift to *both* of them from appellant's parents.

█ Appellant next contends [Reply Brief at 10] that since the parties' marital home, *viz.*, the house in which they lived for some eight years, was titled in the names of appellant and his parents it was not "a gift to the parties jointly." However, the trial court credited appellee's testimony that the house had been a wedding gift to both of the parties upon the occasion of their engagement. D.C.Code § 16–910(b) specifically empowers the trial court to distribute "property accumulated during the marriage, regardless of whether title is held individually or by the parties in a form of joint tenancy or tenancy by the entirety." Accordingly, title is not necessarily determinative of whether property is "marital property." *See Brice v. Brice*, 411 A.2d 340, 343 (D.C.1980) (discussing factors which can create an equitable interest in real property in a spouse who does not hold title).

Appellant also argues [Reply Brief at 9] that the marital home, or any proceeds from its sale, was his "sole and separate property" and hence "was not subject to distribution by the trial court." However, the trial court found to the contrary, expressly finding that [R. 160–160a] "the house was given to both James and her [the parties] as a contemplated wedding gift. Even though the gift was made before they consummated the marriage, when the marriage subsequently occurred this was sufficient to give her [appellee] a marital interest in the real property." The evidence in the record supports such a finding.

█ Finally, appellant argues [Brief at 24–25] that "even were the property [the marital home] to be subject to distribution, the trial court abused its discretion in its manner of doing so." We note that the

trial court expressly recognized [R. 161]: "Where two parties have an interest in real estate, it is appropriate for the Court to look at all the factors to make sure that one of the parties is not unjustly enriched at the expense of the other." *See Robinson v. Evans*, 554 A.2d 332, 338 (D.C.1989) (citation and internal quotations omitted) (explaining that a constructive trust in a divorce action is "a flexible remedial device," the purpose of which is "to force restitution in order to prevent unjust enrichment"). The court went on to conclude upon all the factors here [R. 161–62] "that it would have been inappropriate to give her [appellee] a fifty percent share of the net proceeds ..." and accordingly awarded her only 25% of the proceeds.[3] We are not persuaded under these circumstances that the court abused its discretion in determining that appellee should receive $9,125 out of the $36,500 profit realized on the sale of the marital home.[4]

█ We turn now to the court's alimony award. We are unable to discern in the court's findings of fact any finding on appellant's ability to pay alimony. *See McCree v. McCree*, 464 A.2d 922, 932 (D.C. 1983) (factors for consideration in evaluating alimony award include duration of the marriage, the parties' ages and health, the payor spouse's ability to pay in light of his or her net income, and society's interest in seeing that former spouses do not become public charges).

Appellee vigorously argues that the record contains evidence (and reasonable inferences therefrom) that appellant is financially able to provide spousal support for appellee. Nevertheless, the trial court did not on the record indicate upon what evidence it relied and how it concluded that $500 per month was the proper alimony award under the particular circumstances of this case. We have noted: "A trial

---

3. Appellee has not cross-appealed this discretionary ruling.

4. The trial court noted [R. 162] that it would "consider [as a factor] ... in deciding the amount of a spousal support or alimony award to be made in this case" the interest on this sum

from 1981 to the present. Should the trial court determine on remand that appellant lacked the financial ability to pay spousal support or alimony, the trial court might then decide to review the issue of interest due and owing on the award of the marital home sale proceeds.

judge must make findings of fact and conclusions of law with respect to every material issue that is raised; otherwise meaningful appellate review cannot occur and this court must remand the case or the record." *Ealey, supra,* 596 A.2d at 46; *see also Mumma, supra,* 280 A.2d at 76 (case remanded for further findings on husband's net income because trial court made no finding of it).

The trial court may well have been hampered in making specific findings on appellant's financial capabilities by the uncertain nature of his work and the absence of his tax returns in recent years.[5] Nevertheless, we are confident that upon remand the court will be enabled by its processes and proceedings to make a finding on appellant's annual income and financial capabilities so that all of the factors to be weighed in determining the proper spousal support are on the record.

As to the award of an attorney's fee to appellee, appellant contends [Brief at 34–35] that the trial court committed reversible error by failing to take into account the ability of appellant to pay such award and the "respective earning capacities of the parties." The record in our view demonstrates that the court did in fact consider the duration and cost of the litigation, the respective earning capacities of the parties, and appellant's ability to pay some part of appellee's counsel fees. *See Rachal v. Rachal,* 489 A.2d 476, 478 (D.C.1985). We are not persuaded that the court's award was "so arbitrary" under the circumstances as to amount to an abuse of its discretion. *See Darling v. Darling,* 444 A.2d 20, 23 (D.C.1982) (quoting *Ritz v. Ritz,* 197 A.2d 155, 157 (D.C.1964)).

In sum, we affirm the trial court's award to appellee from appellant of $9,125 and $2,500, respectively. We reverse the trial court's award of spousal support in the amount of $500 per month and remand the case to the trial court with directions to conduct further proceedings and then to make findings of fact and conclusions of law concerning the spousal support due appellee from appellant upon the basis of the appropriate factors.[6]

***So ordered.***

---

5. Appellant is a musical composer and a musician. He claimed that his annual income was uncertain. In addition, he is embroiled in a dispute with a New York bank over an apparently mistaken deposit of a large sum of money to his account which he has been required to repay.

6. Should appellant fail to provide sufficient records to enable the court to ascertain his net income then the court would be required to reexamine "all the factors" in its determination of the award to each party of the proceeds of the sale of the marital home in order "to make sure" that appellant is "not unjustly enriched" at the expense of appellee. *See Robinson, supra,* 554 A.2d at 338.

Failure by appellant to make available relevant and material financial information on the issue of his ability to pay spousal support might well require the trial court to determine that an alimony award should be based on a percentage of income instead of a fixed amount. *See also Mumma, supra,* 280 A.2d at 77.