James M. **SINGER**, Appellant,

v.

Carol Posnick **SINGER**, Appellee.

No. 90–FM–779.

District of Columbia Court of Appeals.

Jan. 20, 1994.

Carl V. Angelis and Pamela B. Forbes, Washington, DC, for appellant.

Kirk Callan Smith, Washington, DC, for appellee.

Before ROGERS, Chief Judge, and FERREN, Associate Judge, and KERN, Senior Judge.

## ON PETITION FOR REHEARING

FERREN, Associate Judge:

We grant rehearing of our decision in this divorce case, *see Singer v. Singer,* 623 A.2d 1226 (D.C.1993), because we no longer can say to the required certainty that the proceeds of the sale of the house in which the Singers lived were distributable as marital property under D.C.Code § 16–910(b) (1989).

The parties became engaged in 1973. Appellant James Singer's parents announced at an engagement party that they were giving them "a home to live in as a wedding gift."

The title to the house, however, was placed only in the names of the elder Singers and their son. Nonetheless, although appellee Carol Posnick's name was not on the deed to the house, that fact alone does not preclude her claim that the house was marital property distributable under D.C.Code § 16–910(b). *See Brice v. Brice,* 411 A.2d 340, 343 (D.C. 1980). The question here, therefore, is whether there was a trial court finding, supported by the record, that the elder Singers (1) intended in 1973 to make a gift to Carol Posnick in contemplation of marriage and (2) kept that intention alive long enough for the gift to become or remain effective when James Singer and Carol Posnick, having abandoned their marriage plans in 1973, married six years later in 1979. We confront a number of conceptual and factual problems that lead us to conclude, upon rehearing, that the case should be remanded for further proceedings on this issue concerning the home.

### I.

■ The first question is whether a gift in contemplation of marriage is (1) a gift of a present interest subject to defeasance—either automatically or by exercise of the donor's power to terminate—upon occurrence of a condition subsequent (failure to marry), or (2) a gift of a future interest contingent upon satisfaction of a condition precedent (marriage).[1] When a gift of a present interest in real property is subject to automatic expiration upon the occurrence (or non-occurrence) of a stated event, it is traditionally called a gift subject to a "special limitation." RESTATEMENT OF PROPERTY § 23 (1936). When the gift is subject to divestiture upon exercise of a power to terminate, it is subject to a "condition subsequent." *Id.* § 24. When the gift of real property is of a future

---

1. D.C.Code § 45–210 (1990) provides that a future interest, called a "future estate," "is one limited to commence at a future day...." According to D.C.Code § 45–301, a future interest in real estate, "whether vested or contingent," may be conveyed "by deed or will." D.C.Code § 45–212 provides:

    A future estate is vested when there is a person in being who would have an immediate right to the possession of the land upon the expiration of the intermediate or precedent estate, or upon the arrival of a certain period or event when it is to commence in possession. It is contingent when the person to whom or the event upon which it is limited to take effect in possession or become a vested estate is uncertain.

    *See generally District of Columbia v. Clark,* 84 U.S.App.D.C. 88, 175 F.2d 821 (1948); *Green v. Gordon,* 38 App.D.C. 443 (1912).

interest intended to "arise on some specified contingency, which must happen within a reasonable time," 28 AM.JUR.2D *Estates* § 333 (1966), the contingency is called an "executory limitation," *id.; see* RESTATEMENT OF PROPERTY § 25, or a "conditional limitation." D.C.Code § 45–211 (1990).[2]

Case law dealing with gifts in contemplation of marriage, when the anticipated marriage did not occur, typically leaves unclear what category of gift is at issue. *See, e.g., Grossman v. Greenstein,* 161 Md. 71, 155 A. 190, 191 (1931) (gift "was conditioned and dependent upon an expected state of facts [marriage] that, failing that state of facts, the gift should fail with it"; gift was "conditional and dependent upon the completion of the marriage"; "gift was contemplated as dependent and conditioned upon their marriage.")

■ Ordinarily, the particular type of gift in contemplation of marriage, characterized by reference to arcane property law concepts applicable to creation of estates in land, will make no difference. But here, there was a six-year delay in the marriage—it occurred in 1979—after the elder Singers put the house in James Singer's name (alongside their own names) in late 1973, in contemplation of his marriage to Carol Posnick on a wedding date set soon thereafter. This state of facts raises considerable question not only about whether a gift to Carol Posnick was intended at all (we do not question the trial court's finding that it was), but also about the nature of the gift under this old—but critically important—property law terminology.[3] For example, if there was a gift, subject

either to a special limitation or to an executory (conditional) limitation, there is a difficult factual question on this record: did Carol Posnick's interest lapse upon cancellation of the parties' first wedding date? If the answer is yes, she received no marital interest in the property upon the eventual marriage in 1979. If, however, the answer is no, another question is presented: whether the wedding in 1979 took place soon enough to avoid either a reversion of Carol Posnick's interest to the elder Singers, or a shifting of her interest to James Singer, before the wedding. Only if Carol Posnick received a gift of a present interest in the house subject to a condition subsequent—*i.e.,* subject to the right of the donors to terminate her interest upon failure of the parties to marry—is it clear that she assuredly received a gift that had not lapsed by the 1979 wedding date, for nothing in the record suggests that the Singers exercised an option to terminate.

It appears from Carol Posnick Singer's opposition to the petition for rehearing that she construed the trial court's ruling to mean the house was a gift to her in 1973 of a future interest, subject to an executory (conditional) limitation, namely marriage:

> Here, the court properly found that the house was a wedding gift. R162. While the wedding was postponed, the fact is that they did get married and on their wedding day, June 3, 1979 *when Mrs. Singer acquired a legal interest in the property.* Judge Arthur Burnett ruled that "when the marriage subsequently occurred this

---

**2.** For our purposes here, the terms "executory limitation" and "conditional limitation" are interchangeable. "[I]t has been said that where an executory limitation is created by a deed, it is commonly designated as a 'conditional limitation.'" 28 AM.JUR.2D *Estates* § 335. D.C.Code § 45–211 provides:

> If [a future estate] is to commence upon the full expiration of [a] precedent estate, it is a remainder and may be transferred by that name. If it is to commence upon a contingency which, if it happen, will abridge or determine such precedent estate before its expiration, it shall be known as a conditional limitation.

**3.** On petition for rehearing, James Singer notes that, for a completed gift there must be "delivery,

intention on the part of the donor to make a gift, and absolute disposition of the subject of the gift." *Duggan v. Keto,* 554 A.2d 1126, 1134 (D.C. 1989). *See also Merriken v. Merriken,* 87 Md.App. 522, 590 A.2d 566, 576 (Md.Ct.Spec.App.1991). He contends that "neither delivery nor absolute disposition of the house ever occurred." We are satisfied that the elder Singers' conveyance of the house by deed to themselves and James Singer in 1973, with the express intent to make a gift of the house to both James Singer and Carol Posnick in contemplation of their marriage, was sufficient for delivery and absolute disposition of either a present or future interest in that house to Carol Posnick, subject to a special limitation, condition subsequent, or executory (conditional) limitation, as the case may be. In effect, the parents and James Singer were trustees for Carol Posnick's beneficial interest.

was sufficient to give her a marital interest in the real property." R161 (Emphasis added.)

The trial court's analysis, however, is ambiguous:

[T]his Court also credits Mrs. Carol B. Singer's testimony that the house was given to both James and her as a contemplated wedding gift. Even though the gift was made before they consummated the marriage, *when the marriage subsequently occurred this was sufficient to give her a marital interest in the real property.*

The second sentence could be read to embrace not only a gift of a future interest subject to an executory (conditional) limitation, but also a gift of a present interest subject to a special limitation or to a condition subsequent. That is to say, the occurrence of the marriage "sufficient to give [Ms. Singer] a marital interest in the real property" could mean that a special limitation or condition subsequent—failure to marry—had not occurred, and thus her interest in the house, now properly characterized as a marital interest, had not lapsed or been terminated. In short, we cannot tell for sure how the trial court characterized the gift.

If the elder Singers made a gift of a present interest subject to a special limitation, or a gift of a future interest subject to an executory (conditional) limitation, there remained a critical question of the donors' intent that the trial court did not address: in giving the house in contemplation of marriage, did the elder Singers intend the gift to fail if the marriage did not occur in late 1973 or early 1974 as planned (the record is unclear as to the intended wedding date), or did they intend for an interest in the house to vest in Carol Posnick whenever the marriage occurred? On this record, this question of the donors' intent is unclear, and no finding of fact expressly answers it.

Carol Posnick Singer claims she received a completed gift of the house in 1973, without clarifying whether she meant a present or a future interest. If she was claiming a future interest to commence upon marriage, it is unclear—and the trial court did not decide—whether that interest was "vested" or "contingent." *See* D.C.Code § 45–212, *supra* note 1. If it was the former, then presumably the delay in the wedding was irrelevant because that event was considered "certain." *Id.* If, however, the interest was "contingent" because "the event upon which it [was] limited to take effect in possession or become a vested estate"—*i.e.,* the marriage—was considered "uncertain," *id.,* then the question of the six-year delay may have profoundly affected that executory limitation to the point of an earlier lapse, depending on the donors' intent.

■ In sum, before we can say that the gift to Carol Posnick did not lapse before—or that the gift became effective upon—her marriage in 1979, there has to be more detailed trial court analysis of the facts in conjunction with the applicable law of property, focusing especially on the donors' intent.

## II.

There is still another question suggested by the property distribution statute itself, D.C.Code § 16–910.[4] Suppose the elder Singers intended not a special or executory limitation, but a present gift to Carol Posnick subject to the condition subsequent that the gift fail if the marriage did not take place as planned soon after the 1973 engagement. It would have followed that, when the marriage was called off, and the Singers did not exercise their option to terminate, they must be

---

4. D.C.Code § 16–910 (1989) provides in relevant part:

Upon the entry of a final decree of annulment or divorce in the absence of a valid antenuptial or post-nuptial agreement or a decree of legal separation disposing the property of the spouses, the court shall:

(a) assign to each party his or her sole and separate property acquired prior to the marriage, and his or her sole and separate property acquired during the marriage by gift, bequest, devise, or descent, and any increase thereof, or property acquired in exchange therefor; and

(b) distribute all other property accumulated during the marriage, regardless of whether title is held individually or by the parties in a form of joint tenancy or tenancy by the entireties, in a manner that is equitable, just and reasonable, after considering all relevant factors....

said to have intended that the gift not fail but that Carol Posnick should continue to keep her share of the house simply because she and James Singer were continuing to live together. Under those circumstances, the house presumably would have become James Singer's and Carol Posnick's property as tenants in common acquired prior to the marriage.

If so, what would happen to the property under D.C.Code § 16–910? Subsection (a) requires assignment "to each party" of "his or her *sole and separate* property acquired prior to the marriage," as well as "sole and separate property acquired *during* the marriage." (Emphasis added.) Subsection (b) concerns distribution of "all other property accumulated during the marriage." Where is commonly or jointly held property acquired prior to the marriage covered? If subsection (a) applies to that kind of property, is there room for an "equitable" distribution of it as under subsection (b), or is the court required to divide the property according to the parties' respective legal interests? If the latter, then if Carol Posnick Singer took title before the marriage, would she therefore be entitled to a 50–50 split as opposed to the 25% share she received through equitable distribution under subsection (b)?

### III.

The trial court's ambiguous resolution of the nature and timing of the gift to Carol Posnick Singer leads us to conclude that, in addition to remanding for further proceedings "as to the net income of appellant and his ability to pay alimony," 623 A.2d at 1227, we must remand the case to the trial court for answers to the questions that will properly resolve whether Carol Posnick Singer is entitled to a distribution of proceeds from the sale of the house, and thus for another ruling on that issue.

*So ordered.*