**William D. PRIMUS, Appellant,**

v.

**Betty J. PRIMUS, Appellee.**

**No. 99–FM–557.**

District of Columbia Court of Appeals.

Argued Jan. 2, 2001.
Decided March 8, 2001.

Nat N. Polito, with whom Natalie O. Ludaway, Washington, DC, was on the brief, for appellant.

Diane M. Brenneman, Washington, DC, for appellee.

Before TERRY and FARRELL, Associate Judges, and GALLAGHER, Senior Judge.

TERRY, Associate Judge:

William Primus sought and obtained a divorce from his wife, Betty Primus, on the ground of separation for one year without cohabitation. On this appeal, he challenges that part of the divorce decree ordering him to pay alimony in the amount of $500 a month. Mr. Primus argues that the trial court abused its discretion in awarding alimony because the award was not supported by substantial evidence and, alternatively, that the trial court did not make sufficient findings to support the award. We hold that there was substantial evidence of record to support some award of alimony, but we agree with Mr. Primus that the trial court's findings were insufficient. We therefore remand the case to the trial court with instructions to clarify how it arrived at the $500 figure.

I

William and Betty Primus were married on August 17, 1963. Over the course of the marriage, each party contributed substantial resources to the education of their three children and the maintenance of the family household.[1] In doing so, the parties accumulated significant debt, primarily in the form of mortgages on two homes obtained during the marriage, one in New Jersey and one in the District of Columbia. At the time of trial, the monthly costs for the New Jersey home were approximately $2,300 in mortgage payments and $400 in taxes and insurance. These costs were offset by approximately $1,300 in income derived from renting the property. The total monthly payments on the District of Columbia home were between $2,000 and $2,100. Although Mrs. Primus was living in the District of Columbia home, she was responsible for the payments associated with the New Jersey home, while Mr. Primus was responsible for the payments associated with the District of Columbia home.[2]

Mrs. Primus has an associate's degree in medical technology and, at the time of trial, was employed as a medical technician with an annual income in 1998 of approximately $37,000. Mr. Primus has a master's degree in marketing and planning and in 1998 earned approximately $62,000 as president and chief executive officer of a charitable organization in New Jersey.[3] It was also established that Mr. Primus had approximately $11,000 in an individual retirement account (IRA) and owned life insurance policies on each of the couple's three children. Both parties were in their late fifties and in good health. The evidence further showed, however, that the parties' monthly expenses exceeded their monthly incomes. Mr. Primus testified, and his financial statements reflected, that his expenses exceeded his income by $180 per month. Mrs. Primus' monthly expenses exceeded her monthly income by nearly $1,400.

The trial court found that Mr. Primus had engaged in questionable activity with respect to some of the marital property and that he had actively dissipated some of the parties' marital assets. Some of these assets were apparently given to a woman living in Frederick, Maryland, with whom Mr. Primus had developed an ongoing relationship of which Mrs. Primus was, for a long time, unaware.

The trial court granted an absolute divorce and distributed the marital property, awarding to Mrs. Primus the District of Columbia home and to Mr. Primus the New Jersey home and the rent derived from it.[4] The court made no findings as to the parties' net income or monthly expenses. Each party was required to pay all expenses and debts—mortgage, taxes, and insurance—associated with the home awarded to that party, and all the debts listed on each one's financial statement were ordered to be paid by that party without contribution from the other.[5] Fi-

1. The parties' three children were all over the age of twenty-one at the time of trial.

2. In 1996 the parties entered into a Loan and Security Agreement which provided that Mrs. Primus would be solely responsible for all mortgage, tax, and insurance payments on the New Jersey home and that Mr. Primus would be responsible for all such payments on the District of Columbia home.

3. Mr. Primus worked full-time throughout the marriage except for three instances of unemployment, including a period from 1995 through 1997. During that time, Mrs. Primus made payments to Mr. Primus of $500 to $700 a month to help him pay his usual portion of the bills.

4. The court also awarded to Mrs. Primus the contents of the District of Columbia home except for certain designated items. To Mr. Primus the court gave certain real property in North Carolina which he had inherited, a 1989 Nissan Pathfinder, the money in his IRA, and the three life insurance policies on the children's lives. Mr. Primus does not challenge the trial court's distribution of property.

5. Each party's additional debt was approximately $22,000.

nally, the court awarded alimony to Mrs. Primus in the amount of $500 per month, along with attorney's fees of $2,500.[6]

In its conclusions of law, the trial court stated:

> Employment is [the parties'] only source of income. Mr. Primus has a master's degree and earns more than twice what Mrs. Primus earns now or is likely to ever earn, given her age and vocational level as a medical technician. As such, Mrs. Primus will have less of an opportunity for future acquisition of assets and income. She will need assistance to continue to live in the family home [in the District of Columbia] and meet her debt obligations. There is an insufficient amount of equity in the properties subject to distribution for the court to award interests in property in lieu of alimony.

## II

■ "Decisions respecting the grant or denial of alimony 'are committed to the sound discretion of the trial court and will be disturbed on appeal only when the record manifests abuse of that discretion.'" *Weiner v. Weiner*, 605 A.2d 18, 19 (D.C. 1992) (citation omitted). There are, however, "certain primary factors" which a court should consider, both in deciding whether to award alimony at all and in determining the amount of the award. *Id.* Those factors include:

> the duration of the marriage, the ages and health of the parties, their respective financial positions, both past and prospective, the wife's contribution to the family support and property ownership, *the needs of the wife and the husband's ability to contribute thereto,* and the interest of society generally in preventing her from becoming a public charge.

*McEachnie v. McEachnie*, 216 A.2d 169, 170 (D.C.1966) (footnote omitted; emphasis added); *see also Weiner*, 605 A.2d at

19–20 (citing *Joel v. Joel*, 559 A.2d 769, 771 (D.C.1989)).

■ Given the evidence at trial, including the duration of the marriage, the age, education, and comparative salaries of the parties, and the active dissipation of some of the marital assets by Mr. Primus, and considering the ultimate distribution of the marital property, the trial court could reasonably conclude that Mrs. Primus was entitled to some amount of support. However, we are unable to discern from the trial court's findings of fact and conclusions of law what the court actually considered in deciding that $500 a month was the appropriate amount of alimony. *See, e.g., Wood v. Wood*, 309 A.2d 103, 107 (D.C. 1973) ("given the sparsity of the findings, we are at a loss as to what was actually considered"). Significantly absent from the court's findings was any discussion of the needs of Mrs. Primus and the ability of Mr. Primus to contribute to those needs. *See McEachnie*, 216 A.2d at 170. Without such findings, we cannot determine whether the court analyzed each party's net disposable income, based on all legitimate financial obligations, or whether the court even considered Mr. Primus' ability to pay the $500 monthly amount. *See Singer v. Singer*, 623 A.2d 1226, 1228–1229 (D.C. 1993) (trial court "did not on the record indicate upon what evidence it relied and how it concluded that $500 per month was the proper alimony award under the particular circumstances of this case"); *see also Moore v. Moore*, 391 A.2d 762, 771 (D.C.1978) (remanding award of child support for further proceedings because "[w]e cannot discern in the trial court's findings ... a sufficient determination of Mr. and Mrs. Moore's respective abilities to pay"). The trial court's statement that Mrs. Primus "will need assistance to continue to live in the family home and meet her debt obligations" does not provide us with any indication of how the court arrived at the $500 figure. *See McEachnie*, 216 A.2d at 171 (trial judge's statement that wife's re-

---

6. Mrs. Primus was not awarded *pendente lite* alimony.

quest for $50 a month in alimony was "quite modest" and that wife was "entitled to that" was not supported by evidence showing that she required that amount for support).

We therefore affirm the judgment of divorce, since it is not challenged by either party. We also affirm the distribution of property, which is also uncontested. We must, however, remand the case to the trial court for a more detailed statement of the reasons for its award of $500 a month in alimony. We leave it to the trial court to decide, in its discretion, whether to make its findings on the basis of the existing record, to hold further hearings, or to invite further written submissions from the parties.

*Affirmed in part, remanded in part for further proceedings.*

FARRELL, *Associate Judge,* concurring:

I concur reluctantly in the remand. *See Singer v. Singer,* 623 A.2d 1226, 1228–29 (D.C.1993). On this record, it seems to me nearly impossible to say that an award of monthly alimony of $500 to the wife would be an abuse of discretion. As the court's opinion points out, the testimony revealed the wife's financial needs to be far greater than the husband's—partly because of accumulated debt traceable to monthly payments of $500–700 she had made to him during his two-year unemployment, and partly because of his earlier dissipation of substantial assets belonging to both spouses. Moreover, while his annual salary at the time of trial was $62,260, hers was $36,000 and destined to decline to less than $32,000 since, as the judge found, she would no longer be able to earn overtime after 1999. In these circumstances, and given the husband's history of failing to

account for funds,[1] there is considerable reason for Judge Goodrich to view skeptically Mr. Primus's claim that he cannot afford alimony equaling less than one-tenth of his salary.

As I see it, the judge is not obliged to explain on remand why he chose $500 rather than, say, $300 or $100. Exactitude of that sort is not required by our cases. It is enough for him to state why the amount he chose is proportionate to the respective incomes and financial needs of the parties.

---

1. As Judge Goodrich found, Mrs. Primus "trusted her husband [over the years] in regard to the family finances," and there were "gaps" in the husband's explanation of where funds ended up following "the first refinance and first equity line of the New Jersey property, the sale of the New York property, and the purchase and second trust on the Washington, D.C. property." At one point Mr. Primus put $30,000 into certificates of deposit "for which he provided no accounting."